UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH BROWN, KATRINA HOLT,
SAMUEL SMITH, SAMANTHA STREETER           Case No.

    Plaintiffs,                                                          Hon.

v.

CHERRY STREET SERVICES, INC.
D/B/A CHERRY HEALTH,

    Defendants.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
Attorneys for Plaintiff
340 Beakes St., Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

---

## COMPLAINT AND JURY DEMAND

NOW COME Plaintiffs Deborah Brown, Katrina Holt, Samuel Smith, and Samantha Streeter ("Plaintiffs"), by and through the undersigned attorneys, and state the following:

### INTRODUCTION

1.     Defendant Cherry Health deliberately violated Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") by denying Plaintiffs' requests for religious and medical exemptions from Defendant's mandatory COVID-19 vaccine policy without any justification.  Had Defendant followed the law and the guidelines of the Equal Employment Opportunity Commission, it would

1

have allowed Plaintiffs to continue working remotely in some cases and to otherwise follow the safety protocols that had safeguarded them throughout the pandemic without incident. Instead, Defendant terminated Plaintiffs despite their combined 47 years of service, which included steadfast loyalty during the most perilous days of the pandemic.

**PARTIES, JURISDICTION, AND VENUE**

2.      Deborah Brown worked as a Health Information Technician for Defendant from November 5, 2001 until December 13, 2021, and resides in Branch, Michigan.

3.      Katrina Holt worked as a Registered Nurse Complex Care Manager for Defendant from April 2013 until December 2021 and resides in Hudsonville, Michigan.

4.      Samuel Smith worked as a Registered Nurse for Defendant from March 2013 until December 2021 and resides in Grand Rapids, Michigan.

5.      Samantha Streeter worked as a Health Information Technician from August 2011 until December 2021 and resides in Hudsonville, Michigan.

6.      Defendant Cherry Health is a domestic for-profit corporation incorporated in Grand Rapids, Michigan.

7.      The Western District of Michigan has jurisdiction over the Title VII of the Civil Rights Act of 1964 ("Title VII") claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the Elliott-Larsen Civil Rights Act ("ELCRA") claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b)(1) because it is the judicial district in which Plaintiff's reside.

9.      Plaintiffs have all submitted charges of discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC"). Plaintiffs Smith, Brown, and Holt received a Notice of Right to Sue from the EEOC within the past 90 days. Plaintiff Streeter has not received

a "right to sue" letter from the EEOC at this time, but her Title VII claims are properly brought

before this Court pursuant to Title VII's single filing (or "piggybacking") rule.

## FACTUAL ALLEGATIONS

### Defendant's Mandatory Vaccine Policy

10.    In September 2021, Defendant announced its COVID-19 mandate and dictated that

all employees must be vaccinated by November 1, 2021.

11.    Each Plaintiff submitted a religious accommodation request, and each request was

denied.

### Plaintiffs' Religious Accommodation Requests

12.    Each Plaintiff detailed their sincerely held *bona fide* religious beliefs precluding

them from being vaccinated from COVID-19.

13.    Plaintiff Streeter submitted her accommodation request on October 6, 2021, and

stated:

> I am writing to formally and respectfully apply for a religious
> exemption on the COVID vaccination policy that requires all
> employees to show proof of vaccination in order to stay employed.
> I base my request on religious grounds that I hold sincere and
> genuine beliefs that forbit me from accepting a COVID vaccination.
> I am a Christian and believe that Christ died and was resurrected to
> cleanse our sins and that we owe our glory to God and His sacrifice.
> He also provided us with the Holy Spirit who is the voice of reason
> and the guidance that Christians believe in when faced with
> obstacles that intrude into our lives. God and the Holy Spirit are
> always with us as believers in faither. Corinthians 3:16-17 states:
> "Do you not know that you are God's temple and that God's Spirit
> dwells in you? If anyone destroys God's temple, God will destroy
> them. For God's temple is holy, and you are that temple." 1
> Corinthians 6:19-20 "Or, do you not know that your body is a temple
> of the Holy Spirit within you, whom you have from God? You are
> not your own, for you were bought with a price. So, glorify God in
> your body."
>
> Because Christ paid the ultimate price for our sins, Christians are to

be obedient to the word and follow the path that Christ has laid for our lives. In my faith, the Lord tells me that the bodies of the believers are not to be rendered impure and filled with unnatural and unsavory substances. I believe the vaccination would render my body unclean and comprise my relationship with God because of my oath not to do such things. I am to be obedient to his word.

The COVID vaccination opposes my personal interpretation of religious beliefs that I hold sacred and I believe that if I were to participate in this vaccination policy I would be prevented from worshipping my God/Creator in the way that I see fit because this would be a daily sin knowing that this substance will always be in my body. These are my sincerely held personal religious beliefs. These thoughts are the unique message I received from God. I don't ask that you, or anyone else, agree with these thoughts and personal translations. I respectfully request that my sincere beliefs be honored as truthful and legally permissible. Based on what I have shared, I ask this religious exemption be approved so that my conscience can remain clear before God.

14.     Defendant denied Plaintiff Streeter's religious accommodation request just hours after she submitted it due to "workplace safety," without ever discussing with her whether reasonable accommodations would be appropriate.

15.     Plaintiff Brown, Plaintiff Holt, and Plaintiff Smith were similarly denied without any justification or discussion.

16.     Defendant did not provide Plaintiff with any factual criteria for its claim of "undue hardship" in its denial letters to Plaintiffs.

17.     Plaintiffs all worked safely and successfully for Defendant prior to its vaccine mandate.

18.     There are a host of reasonable accommodations that Defendant failed to consider.

19.     Plaintiffs could have tested daily to confirm whether they were not ill.

20.     Plaintiffs could have engaged in frequent sanitizing and disinfecting.

21.     Plaintiffs could have worn gloves and respirators in the workplace.

22.     Defendant made employees work in-person throughout the pandemic. Before any vaccine was developed, the following safety measures were deemed sufficiently effective to protect employees, patients, and their loved ones: daily testing, enhanced sanitation measures including handwashing and disinfecting, gloves and respirators, and social distancing whenever practicable.

23.     Examples of reasonable accommodations include wearing a mask, working "at a social distance" from others, working a modified shift, getting tested, and being given the opportunity to telework.  U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

24.     "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id.*

25.     Defendant did not explain to Plaintiffs why their accommodation requests could not be granted.

26.     Generally, the sincerity of an employee's religious beliefs "is not open to question." *United States v Seeger*, 380 U.S. 163, 185 (1965).  Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

27.     Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).  "Bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Id.*

28.     Defendant's accommodation process was arbitrary.

29.     Defendant did not explore available reasonable alternatives to the vaccine.

**Plaintiffs Brown's Medical Accommodation Request**

30.     No options for reasonable accommodation were discussed, despite such accommodations being readily available.

31.     For example, earlier in the pandemic, Plaintiff Holt's supervisors and the physicians supported and approved of her working remotely.

32.     However, Defendant never explained why mask wearing, temperature checks, sanitation, or remote work were a hardship when these same protective measures were effective during the onset of the pandemic.

33.     Plaintiff Brown worked remotely over the last two years.

34.     When Plaintiff Brown underwent chemotherapy to treat breast cancer, Defendant allowed her to test weekly for COVID-19 and wear a mask in the office as accommodations.

35.     Plaintiff submitted both religious and medical accommodation requests for the COVID-19 vaccination.

36.     Defendant was legally required to engage in the ADA's interactive process before it terminated Plaintiff Brown.

37.     However, Defendant terminated Plaintiff Brown on December 13, 2021, without attempting to engage in this interactive process.

38.     Despite the EEOC instructing employers that it is possible to accommodate employees seeking reasonable accommodation for their religious beliefs, practices, or observances without imposing an undue hardship (*id.* At L.3), Plaintiffs were told in conclusory fashion that they simply could not be accommodated.

### Defendant Did Not Base Its Decision on Undue Hardship, Nor Could It Establish Undue Hardship

39.     The prohibition against religious discrimination imposes a "duty" on employers to accommodate sincere religious beliefs, absent "undue hardship." *Trans World Airlines, Inc. v.*

6

*Hardison*, 432 U.S. 63, 74 (1977).

40.    The employer, not the employee, bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc*., 571 F.2d 338, 341 (6th Cir. 1978).

41.    An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Draper v. United States Pipe & Foundry Co*., 527 F.2d 515, 520 (6th Cir. 1975).  The operative word is "undue," meaning that "something greater" than a mere hardship is required. *Id.*

42.    Here, Defendant cannot satisfy its burden of proving undue hardship.

43.    Defendant's allegations are based in religious animus rather than science.

44.    Plaintiffs were not requesting a license to roam about uninhibited without sanitizing or wearing any personal protective equipment ("PPE"), as though no health threat existed.

45.    Plaintiffs were more than willing to comply with all safety protocols.

46.    Defendant's allegations of undue hardship lack scientific backing and, in fact, directly contravene scientific evidence supporting the effectiveness of practices such as handwashing and wearing respirators in preventing infection and death.  Stella Talic et al., *Effectiveness of public health measures in reducing the incidence of covid-19, SARS-CoV-2 transmission, and covid-19 mortality: systematic review and meta-analysis*, Brit. Med. J (2021).

47.    Plaintiffs had been engaging in these alternative practices, which had been deemed effective throughout the pandemic for approximately eighteen (18) months before the mandate.

## COUNT I
## VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq.*
## RELIGIOUS DISCRIMINATION–FAILURE TO ACCOMMODATE
## ON BEHALF OF PLAINTIFFS

48.     Plaintiffs restate the foregoing paragraphs as set forth fully herein.

49.     Title VII prohibits an employer from discriminating against an employee "because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1).  Title VII's definition of "religion" includes "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

50.     Plaintiffs can establish *prima facie* cases of discrimination by showing (1) they hold sincere religious beliefs that conflict with an employment requirement; (2) they informed their employer of same; and (3) they were disciplined for failing to comply with the employment requirement."  *Yeager v. FirstEnergy Generation Corp*, 777 F.3d 362, 363 (6th Cir. 2015).

51.     Plaintiffs hold sincere religious beliefs that conflict with Defendant's vaccine mandate.

52.     Plaintiffs informed Defendant of the same.

53.     Plaintiffs were disciplined for failing to comply with the vaccine mandate.

54.     Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

55.     Defendant could have instituted multiple reasonable accommodations without undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, and regular testing.

56.     Defendant never explained why Plaintiffs could not be accommodated.

57.     Defendant never explained why no accommodations could have worked.

58.     Due to their terminations, Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical

effects associated therewith; and Plaintiffs will  continue to suffer in the future.

59.     Plaintiffs have been denied employment, placed in financial distress, suffered a loss

of earnings and benefits, suffered a loss of health insurance coverage, and suffered a loss of and

impairment of their earning capacity and ability to work.

60.     Plaintiffs have also been required to employ the services of an attorney as a result.

61.     Defendant's actions were intentional and/or reckless.

## COUNT II
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.
### RELIGIOUS DISCRIMINATION–RETALIATION
### ON BEHALF OF PLAINTIFFS

62.     Plaintiffs restate the foregoing paragraphs as set forth fully herein.

63.     It is unlawful for an employer to retaliate against employees who communicate

about employment discrimination or request accommodation for a religious practice.

64.     Plaintiffs engaged in protected activity when they requested accommodations from

Defendant's vaccine mandate due to their religious beliefs.

65.     Defendant subsequently retaliated against Plaintiffs by terminating them.

66.     Plaintiffs have suffered emotional and physical distress, mental and physical

anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated

therewith because of the unlawful retaliatory conduct, and they will continue to suffer in the

future.

67.     Plaintiffs have been denied employment, placed in financial distress, suffered a loss

of earnings and benefits, suffered a loss of and impairment of their earning capacity and ability to

work because of Defendant's retaliatory conduct, and they will continue to suffer in the future.

68.     Plaintiffs have been required to employ the services of an attorney as a result.

69.     Defendant's actions were intentional and/or reckless.

## COUNT III
## VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT ("ELCRA")
## RELIGIOUS DISCRIMINATION–FAILURE TO ACCOMMODATE
## ON BEHALF OF ALL PLAINTIFFS

70.     Plaintiffs restate the foregoing paragraphs as set forth fully herein.

71.     Plaintiffs hold sincere religious beliefs that conflict with Defendant's vaccine mandate.

72.     Plaintiffs informed Defendant of same.

73.     Plaintiffs were terminated for failing to comply with Defendant's vaccine mandate.

74.     Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

75.     Defendant could have instituted multiple reasonable accommodations without undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, and regular testing.

76.     Defendant never explained why it could not accommodate Plaintiffs.

77.     Defendant never explained why no accommodations could have worked.

78.     Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of Defendant's denial of their requests, and Plaintiffs will continue to suffer in the future.

79.     Plaintiffs have been denied employment, placed in financial distress, suffered a loss of earnings and benefits, suffered a loss of health insurance coverage, and suffered a loss of and impairment of their earning capacity and ability to work because of Defendant's denial of their requests.

80.     Plaintiffs have been required to employ the services of an attorney as a result.

81.     Defendant's actions were intentional and/or reckless.

**COUNT IV**
**VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT**
**RELIGIOUS DISCRIMINATION–RETALIATION**
**ON BEHALF OF ALL PLAINTIFFS**

82.     Plaintiffs restate the foregoing paragraphs as set forth fully herein.

83.     It is unlawful for an employer to retaliate against employees who communicate about employment discrimination or request accommodation for a religious practice.

84.     Plaintiffs engaged in protected activity when they requested accommodations.

85.     Defendant retaliated against Plaintiffs by improperly terminating them.

86.     Defendant, by denying Plaintiffs' Requests for Accommodation, clearly intended to force employees to abandon their religious beliefs and receive the vaccine.

87.     Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the unlawful retaliatory conduct and will continue to suffer in the future.

88.     Plaintiffs have been denied employment, placed in financial distress, suffered a loss of earnings and benefits, and suffered a loss of and impairment of their earning capacity and ability to work because of the retaliatory conduct, and they will continue to so suffer in the future.

**COUNT V**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**DISABILITY DISCRIMINATION**
**ON BEHALF OF PLAINTIFF BROWN**

89.     Plaintiff restates the foregoing paragraphs as set forth fully herein.

90.     Plaintiff has a "disability" as defined in 42 U.S.C. § 12102(1).

91.     Plaintiff was regarded as having a disability under 42 U.S.C. § 12102(3)(A).

11

92.     Defendant was legally required to engage Plaintiff in an interactive process before placing her on involuntary leave and terminating her.

93.     Defendant failed to continually engage in an interactive process with Plaintiff.

94.     Defendant discriminated against Plaintiff on account of her "actual or perceived" disability when she was placed on involuntary leave and was terminated on December 13, 2021.

95.     Defendant's actions were knowing and willful.

96.     Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result.

97.     Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

a.     Compensatory damages for monetary and non-monetary loss;

b.     Exemplary and punitive damages;

c.     Prejudgment interest;

d.     Reasonable attorney's fees; and

e.     Such other relief as in law or equity may pertain.

Respectfully Submitted,
HURWITZ LAW, PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorney for Plaintiff
340 Beakes St., Suite 125
Ann Arbor, MI 48103

12

(844) 487-9489
noah@hurwitzlaw.com

Dated: December 19, 2022

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH BROWN, KATRINA HOLT,
SAMUEL SMITH, SAMANTHA STREETER,         Case No.

    Plaintiffs,                          Hon.

v.

CHERRY STREET SERVICES, INC.,
D/B/A CHERRY HEALTH,

    Defendants.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
Attorneys for Plaintiff
340 Beakes St., Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

---

## DEMAND FOR TRIAL BY JURY

Plaintiffs Deborah Brown, Katrina Holt, Samuel Smith, and Samantha Streeter

("Plaintiffs"), by and through their attorneys Hurwitz Law, PLLC, hereby demand a trial by jury,

for all issues so triable.

                         Respectfully Submitted,
                         HURWITZ LAW, PLLC

                         /s/ Noah S. Hurwitz
                         Noah Hurwitz (P74063)
Dated: December 19, 2022         Attorney for Plaintiff